IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIAN B., and JULIE B., individually and on behalf of S.B., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>REGENCE BLUE CROSS AND BLUE SHIELD OF UTAH; LANDESK SOFTWARE INC. MEDICAL PLAN; IVANTI; and the IVANTI MEDICAL PLAN,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:19-cv-471-TC |

In 2017, Defendant Regence Blue Cross and Blue Shield of Utah (Regence) denied Plaintiffs' claim for coverage of Plaintiff S.B.'s mental health treatment at a residential treatment facility in Utah. Plaintiffs filed suit under ERISA asserting (1) a claim for recovery of benefits, (2) a claim for equitable relief based on violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), and (3) a claim for statutory penalties against Defendant Ivanti for refusing to provide documents that Plaintiffs requested under ERISA. The Defendants have filed a Rule 12(b)(6) motion to dismiss the second and third causes of action.

For the reasons set forth below, the court finds that Plaintiffs have not stated a claim under MHPAEA, but they have sufficiently alleged the elements of a claim for statutory penalties.

1

# FACTUAL ALLEGATIONS[1]

Plaintiffs Julian B. and Julie B. are the parents of Plaintiff S.B., a teenager who received mental health treatment at Sunrise Residential Treatment Center (Sunrise) in Utah from approximately December 2017 to February 2019. Sunrise is a licensed residential treatment facility providing sub-acute inpatient treatment to adolescent girls with mental health, behavioral, and/or substance abuse problems.

At the time S.B. was treated, her father Julian was a participant in two successive employee welfare benefit plans, both of which are named as defendants. S.B. was a beneficiary of those plans. The first plan—Defendant LANDESK Software Inc. Medical Plan—covered Plaintiffs in 2017 (the 2017 Plan). The Ivanti Medical Plan (the 2018 Plan) was a successor to the LANDESK Plan and covered the Plaintiffs in 2018. Defendant Ivanti is the sponsor and plan administrator for the 2018 Plan. The content and coverage of the 2017 Plan and the 2018 Plan (collectively, the Plans) are essentially the same.

Plaintiffs submitted claims to the Plans for S.B.'s treatment. Regence, the third-party claims administrator for the Plans, handled the claims and denied payment for S.B.'s treatment at Sunrise. It provided the following justification for denial: "[T]he service [provided to S.B.] is not medically necessary. The clinical documentation we received from [S.B.'s] doctor indicates that the recommended treatment is feasible at a lower level of care. Your health plan does not cover services that are not medically necessary." (Compl. ¶ 27, ECF No. 2.)

---

[1] For purpose of the court's analysis under Rule 12(b)(6), the court must take all well-pled factual allegations in the complaint as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiffs assert that Regence improperly applied acute medical care standards to evaluate S.B.'s claim for coverage of her treatment at a sub-acute facility.  They point to language in Regence's explanations for denying coverage:

> The clinical documentation we received from [S.'s] treatment team indicates she is not a danger to herself or others, and her risk status is manageable; she does not show severe symptoms of disturbed thinking or behavior; she would have reached a baseline status, and there was no reasonable expectation that her condition would further improve.  In addition, there is no evidence in the submitted medical records to indicate that she requires 24-hour nursing supervision, and [S.] can safely be treated for her diagnosed conditions in a less-restrictive setting.

(Id. ¶ 39 (quoting June 20, 2018 Ltr. from Regence to Pls.).)  As another example, they cite to an analysis by an external reviewer providing a similar justification for denial:

> … The patient had shown significant improvement and achieved maximum benefit from this level of care …. She was not sufficiently severely disturbed in thinking/behavior to require this level of care.  … She was not suicidal, homicidal, or gravely impaired to care for herself.  There is no evidence in the submitted medical records to indicate that she required 24-hour nursing supervision.  Therefore, based on the submitted documentation, psychiatric residential treatment from 12/17/17 forward is considered not medically necessaru [sic]….

(Id. ¶ 41 (quoting June 13, 2018 Ltr. from Ashraf Ali to Regence).)

Plaintiffs appealed Regence's denial.  While the appeal was pending, Plaintiffs sent a written request to Regence for copies of the following documents:

> [A]ll governing plan documents, the summary plan description, any insurance policies in place for the benefits they were seeking, any administrative service agreements that existed, the Plans' mental health and substance abuse criteria, including the Plans' criteria for skilled nursing and rehabilitation facilities, and any reports provided to Regence from any physician or other professional regarding the claim[.]

(Id. ¶ 37.)

Regence refused to provide Plaintiffs with many of the documents they requested and offered the following explanation for limiting its production:

> Please note, we are unable to supply you with the documentation that you have requested which is not relevant to this appeal, including internal documentation under which the plan is operated, all internal governing plan documents, administrative service agreements, claim denial rate information, and medical policy and criteria that were not used in the review.

(Id. ¶ 40 (quoting Regence's June 20, 2018 letter upholding initial denial of benefits).) Plaintiffs allege that Regence, when responding to the written request, was acting on behalf of Ivanti, the Plan Administrator. "Regence, acting as agent for both Ivanti, the Plan Administrator for the 2018 Plan, and the Plans" was obligated to provide the documents within thirty days of Plaintiffs' request. (Id. ¶ 59; see also id. ¶ 7 ("At all relevant times Regence acted as agent for both the 2017 and 2018 Plans.").)

An unjustified refusal to respond to a request for documents under ERISA can subject the plan administrator to statutory penalties. 29 U.S.C. §§ 1024(b)(4), 1132(c)(1)(B). Plaintiffs allege that, "based on the failure of Regence, as agent for both Ivanti and the 2018 Plan, to provide within 30 days documents under which the Plan was established or operated," Ivanti is liable for the statutory penalties. (Id. ¶ 13.)

After Regence denied Plaintiffs' appeal, Plaintiffs filed suit here, seeking reimbursement of more than $195,000 in treatment costs, statutory penalties, and a wide variety of equitable relief.

## ANALYSIS

Defendants' Rule 12(b)(6) motion asks the court to dismiss the MHPAEA and statutory penalty claims because neither states a claim upon which relief can be granted. The MHPAEA claim, they say, contains nothing more than conclusory allegations and formulaic recitations of the law that do not satisfy Rule 8's notice pleading requirements. As for the penalty claim, they argue it is flawed because Plaintiffs did not send their request to Ivanti, the only defendant that

could, in theory, be liable under the penalty statute.

**Standard of Review**

Rule 8 requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails to satisfy this "notice pleading" requirement, he may be subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under that rule, a party is entitled to dismissal if the complaint fails to state a claim upon which relief can be granted.

When reviewing Defendants' Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the Plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The United States Supreme Court emphasized that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

To avoid dismissal, the Plaintiffs must "state a claim to relief that is plausible on its face." Id. at 678. A facially-plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. If the plaintiff does not satisfy that standard, the court must dismiss the complaint for failure to state a cause of action under Rule 12(b)(6).

**Claim for Violation of MHPAEA**

Plaintiffs' second cause of action alleges violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act"). Defendants argue for dismissal because the Complaint does not contain any well-pleaded facts that state a plausible claim for relief and instead presents formulaic recitations of the law and conclusions that have no factual support.[2]

The Parity Act requires a group health plan to "ensure" that its limitations on mental health treatment "are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and that "no separate treatment limitations" apply only to behavioral health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations may be either quantitative or non-quantitative. 29 C.F.R. § 2590.712(a).

Here, Plaintiffs do not take issue with express limitations in the Plans' language. Instead, they bring an "as applied" challenge to Defendants' application of non-quantitative limitations.

To avoid dismissal, Plaintiffs must allege that Defendants imposed a limitation on mental health benefits that is more restrictive than limitations they place on analogous medical/surgical benefits. Here Plaintiffs assert that the Plans provide analogous benefits in "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." (Compl. ¶ 55.)

They contend that Regence does not exclude or restrict coverage of treatment at those

---

[2] Defendants also assert that the MHPAEA claim should be dismissed because it "is merely a repackaged benefits claim under the guise of a MHPAEA claim, and equitable relief is available under § 1132(a)(1)(B) [the basis for Count I]. Count I and Count II both seek to remedy the same injury: denial of monetary benefits allegedly owed pursuant to the terms of the Plan." (Mot. Dismiss Counts II and III of Pls.' Compl. at 18, ECF No. 16.) The court does not reach this issue because Plaintiffs' allegations do not state a claim for which relief can be granted under the Parity Act.

facilities "in the manner Regence excluded coverage of treatment for S. at Sunrise." (Id.) In other words, the Defendants violated MHPAEA because they "do not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits." (Id. ¶ 56.) Although the Complaint's allegations do not clearly articulate what "acute medical necessity criteria" are, the Plaintiffs shed some light in their opposition brief by suggesting that the written reviews of the mental health professionals used language reflecting acute medical criteria in the mental health setting. (See Opp'n to Mot. Dismiss at 17, ECF No. 17 (stating that Defendants, in the denial letters, required a showing of "acute mental health symptoms, including being homicidal, suicidal, gravely impaired to care for self, or being a danger to self or others").)

Defendants argue that dismissal is appropriate because the Plaintiffs do not allege facts that plausibly identify a mental health treatment limitation that is more restrictive than medical/surgical benefits in an analogous category, or, in other words, Plaintiffs do not plausibly allege why treatment of S.B.'s mental health claims was not in parity with review of medical/surgical claims. The court agrees with the Defendants.

First, the majority of the Complaint's MHPAEA claim contains conclusory allegations that recite the language of MHPAEA and its implementing regulations. Second, although Plaintiffs quote Regence's specific reasons for denying the claim for lack of medical necessity (see paragraphs 27, 37, 39, and 41 of the Complaint), their only allegation linking Regence's review to the Plans' treatment of medical/surgical claims is conclusory. They simply say that "the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria." (Compl. ¶ 56.) At most, the well-pled factual allegations establish that Regence applied the wrong criteria when

evaluating the medical necessity of S.B.'s sub-acute care. Without a plausible link to benefit claims in the medical/surgical categories, Plaintiffs do not allege a cause of action under the Parity Act.

As for Plaintiffs' contention that they need discovery before they can articulate the connection, they request permission to conduct a fishing expedition. To accept as fact a suspicion that has no known support is inherently contrary to Rule 8. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79. Under the plausibility standard, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Plaintiffs have not done that.

For these reasons, the court dismisses Plaintiffs' second cause of action.

**Claim for Statutory Penalties**

A plan administrator—in this case, Ivanti—must, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). If the Plan Administrator does not fully respond within thirty days of the request, it is subject to statutory penalties:

> Any [Plan] administrator … who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary … within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110[3]] a day from the date of such failure or refusal ….

29 U.S.C. § 1132(c)(1)(B).

---

[3] Although the statute lists the penalty amount as $100 per day, the Department of Labor increased the penalty amount to $110 per day. 29 C.F.R. § 2575.502c-1 (2020).

Plaintiffs allege in their third cause of action that they directed their request for documents to Regence, who failed to provide Plan documents within thirty days of the request. Defendants correctly point out that plan administrators, not claims administrators, are potentially liable for statutory penalties for refusing or failing to provide requested documents. Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 444 (10th Cir. 1996). It follows that a party who seeks statutory penalties must have requested the information from the plan administrator. 29 U.S.C. § 1132(c) (imposing statutory penalties on "any administrator" who fails to comply with a request for information within thirty days of the request); Thorpe, 80 F.3d at 444. Citing to these rules, Defendants contend that Plaintiffs' demand for statutory penalties against Ivanti fails as a matter of law because "Plaintiffs do not allege (and cannot allege) … that they submitted a written request to the Plan Administrator (Ivanti)." (Mot. Dismiss Counts II and III of Pls.' Compl. at 6, ECF No. 16.)

Plaintiffs concede they did not submit their request to Ivanti. And they acknowledge that Regence is not liable under ERISA for failure to provide all of the documents requested. But, according to Plaintiffs, Ivanti is liable because it is responsible for the actions of Regence. They maintain that "Regence, acting as agent for both Ivanti, the Plan Administrator for the 2018 Plan, and the Plans" was obligated to provide the documents within thirty days of Plaintiffs' request. (Compl. ¶ 59.)

To support their position, Plaintiffs point out that under Tenth Circuit law, a plan administrator could conceivably be liable for statutory penalties based on the actions of another. First they quote language in McKinsey v. Sentry Insurance, 986 F.2d 401 (10th Cir. 1993). McKinsey did not address the issue before this court, so the language upon which Plaintiffs rely is dicta. The McKinsey court focused on whether the plaintiff could seek penalties against a "de

facto plan administrator" (in that case his employer) rather than the plan administrator itself. See id. at 402–03. The court rejected the "de facto plan administrator" concept. See id. at 404.[4] But it recognized the possibility that an actual plan administrator could be liable for the actions of an agent:

> If in practice, company personnel other than the plan administrator routinely assume responsibility for answering requests from plan participants and beneficiaries, a plaintiff's suit against the plan administrator will not necessarily fail …. Rather, the actions of the other employees may be imputed to the plan administrator. See Bova v. American Cyanamid Co., 662 F. Supp. 483, 491 (S.D. Ohio 1987) (holding plaintiff's failure to address his written request to the plan administrator personally was not a defense to his § 1132(c) claim because "the plan summary instruct[ed] employees to direct inquiries to their personnel or employee benefits departments"); Porcellini v. Strassheim Printing Co., 578 F. Supp. 605, 616 (E.D. Pa. 1983) (holding that written request for information made to employee of corporate plan administrator was sufficient to meet statutory requirement that participant send written request to plan administrator). The statutory liability for failing to provide requested information remains with the designated plan administrator, however, not with the employer or its other employees.

Id. at 404–05. See also Wilcott v. Matlack, Inc., 64 F.3d 1458, 1461 (10th Cir. 1995) (stating, in dicta, that "[u]nder appropriate circumstances, a § 1132(c) penalty may be based on information requests … that were not directed to the plan administrator.") (citing McKinsey at 404–05, and Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1109 n.2 (10th Cir. 1994)).

After McKinsey raised the possibility of liability when a third party handled a document request, the Tenth Circuit did impose liability on a plan administrator based on the actions of another. In Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108 (10th Cir. 1994), the court determined that a request for information sent to legal counsel for the employer was in essence a request to the plan administrator. The court's conclusion was based on facts unique to that case:

---

[4] The court stated that "Section 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual or entity is the plan administrator for purposes of ERISA. The statutory language is clear and unambiguous and admits of no other interpretation." McKinsey, 986 F.2d at 404 (emphasis in original).

10

"[The employer's] counsel initiated the pension and profit sharing plan, handled the business of the plan and was the legal representative of [the employer.]" Id. at 1109 n.2. Significantly, the court made its decision based on facts obtained through, for example, testimony from the employer's president. See id. The court did not evaluate the issue in the context of a Rule 12(b)(6) motion to dismiss.

The question of whether Regence was acting as Ivanti's agent is one of fact. Calhoun v. State Farm Mut. Auto. Ins. Co., 96 P.3d 916, 925 (Utah 2004). Similarly, Tenth Circuit cases suggest that, under certain circumstances, the actions of another may subject the plan administrator to statutory penalties. But an evaluation of those circumstances is also highly fact-dependent.

At this stage, the court may not make factual findings. Given the case law, Plaintiffs' allegation that Regence was acting as Ivanti's agent when it processed the written request for materials, and the factual nature of the issue, Defendants are not entitled to dismissal of Plaintiffs' statutory penalties claim.

## ORDER

For the foregoing reasons, Defendants' Motion to Dismiss Counts II and III of Plaintiffs' Complaint (ECF No. 16) is GRANTED IN PART AND DENIED IN PART as follows:

1. Plaintiffs' Second Cause of Action under MHPAEA is DISMISSED.
2. Plaintiffs' Third Cause of Action for statutory penalties is NOT DISMISSED.

DATED this 23rd day of April, 2020.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge

11